IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JIMMY E. BOLING,

      Plaintiff,

v.                               CASE NO. 2:06-cv-01055

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Brief in Support of Judgment on the Pleadings.

Plaintiff, Jimmy Boling (hereinafter referred to as

---

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

"Claimant"), filed applications for SSI and DIB on September 16, 2004, alleging disability as of June 1, 1982, due to a back impairment and diabetes. (Tr. at 16, 109-12, 124.) Claimant's insured status for purposes of his DIB application expired June 30, 1986. (Tr. at 16.) The claims were denied initially and upon reconsideration. (Tr. at 75-79, 82-84.) On June 6, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 85.) Hearings were held on October 3, 2005, and March 1, 2006, before the Honorable James Toschi. (Tr. at 38-47, 48-72.) By decision dated May 8, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-26.) On October 20, 2006, the Appeals Council considered additional evidence from the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 5-8.) On December 19, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

2

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f),

3

416.920(f) (2006).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of diabetes and degenerative disc disease.  (Tr. at 18.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.)  The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 21.) As a result, Claimant cannot return to his past relevant work. (Tr. at 24.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as packer/small merchandise and dowel pin inspector, which exist in significant numbers in the national economy. (Tr. at 25.)  On this basis, benefits were denied. (Tr. at 25.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision

4

of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty-nine years old at the time of the administrative hearing. (Tr. at 51.) Claimant graduated from high school and was not enrolled in special education.  (Tr. at 53.) Claimant had not worked in the past fifteen years and, as a result, had no past relevant work.  (Tr. at 66.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The evidence includes school records, which reveal that Claimant graduated from high school and received Bs, Cs and Ds. (Tr. at 163.)

Claimant was involved in a motor vehicle accident on June 11, 1983, and sustained multiple injuries including contused lacerations of the forehead, eyebrows, eyelids and nose and a chest contusion. (Tr. at 172.) X-rays of the cervical spine were negative. (Tr. at 173.)

The next record of medical treatment is dated several years later on May 17, 2004, when Claimant reported to an urgent care with complaints of a rash. (Tr. at 178.)

On November 29, 2004, Kip Beard, M.D. examined Claimant at the request of the State disability determination service. Claimant was five feet, eleven inches tall and weighed 309 pounds. (Tr. at 185.) Claimant reported he had x-rays twelve to fourteen years ago while incarcerated and was told he had "two broken discs." (Tr. at 183.) He never had an MRI or surgery. He reported constant lower back pain without radiation. Claimant reported intermittent left leg numbness in the posterior left leg, at times into the foot affecting the foot diffusely. He does not use a back brace, heating pad or ice pack. Claimant was told recently that he had

6

elevated blood sugar levels.  (Tr. at 183.)  Dr. Beard diagnosed chronic musculoskeletal low back pain and degenerative disc disease.  (Tr. at 186.)  Examination of the lumbosacral spine revealed some mild paravertebral tenderness and curvature appeared normal.  There was no spasm.  Claimant could stand on either leg alone.  There was no leg length discrepancy.  Seated and supine straight leg raising was 90 degrees with some mild back pain while supine.  No complaints while seated.  Hips were without pain or tenderness.  On neurological examination, there was no evidence of weakness on manual muscle testing.  Sensation appeared intact. (Tr. at 186.)  Dr. Beard noted that Claimant's lumbar x-ray showed significant degenerative disc disease in L5-S1 with some anterior osteophytic spurring.  (Tr. at 186.)

On December 24, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that as of the date last insured, June 30, 1986, there was insufficient evidence from which to conduct an assessment.  (Tr. at 192-99.)  A second State agency source affirmed this finding.  (Tr. at 199.)

The same sources completed a current Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, with only an occasional ability to climb ladders, ropes and scaffolds, balance, stoop, kneel and crawl and a need to avoid concentrated exposure to extreme cold, heat, vibration and even moderate exposure to hazards.  (Tr. at 202-09.)

Claimant underwent an MRI on April 4, 2005.  It showed mild to moderate central canal stenosis throughout the entirety of the lumbar spine from L2 through S1, degenerative changes at L2-3 with a broad based disc bulge, broad based disc bulge at L3-4 with bilateral nerve root impingement, broad based disc bulge at L4-5 without obvious nerve root impingement and severe degenerative changes, grade I posterior listhesis and a large broad based disc bulge at L5-S1 with bilateral nerve root impingement and central canal stenosis.  (Tr. at 210.)

The record includes treatment notes from Family Care dated September 14, 2002, March 29, 2005, April 5, 2005, and September 27, 2005.  Claimant was treated for back pain and diabetes mellitus.  (Tr. at 212-16.)

On January 14, 2006, Sheila Emerson Kelly, M.A. examined Claimant at the request of his counsel.  On the WAIS-III, Claimant attained a verbal IQ score of 72, a performance IQ score of 73 and a full scale IQ score of 70.  The scores were valid.  (Tr. at 222.) Ms. Kelly made no Axis I diagnosis.  On Axis II, she diagnosed mental retardation, mild by social security standards, personality disorder, not otherwise specified with passive aggressive and antisocial characteristics.  (Tr. at 224.)  Ms. Kelly completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on which she rated many of Claimant's abilities as fair to poor.  (Tr. at 225-26.)

On February 6, 2006, Erwin R. Chillag, M.D. examined Claimant, again at his counsel's request.   Claimant weighed 284 pounds. Claimant had full range of motion and normal strength in both upper extremities.   Reflexes were absent.   Straight leg raising was possible to 70 degrees on the right and 60 degrees on the left. (Tr. at 227.)  Claimant was able to flex to 80 degrees and lacked about eight inches of being able to touch his toes.   Both knee jerks and ankle jerks were absent.   Claimant had normal power in the long extensors of his big toes.   Dr. Chillag observed that Claimant has severe uncontrolled diabetes mellitus with advanced neuropathy as evidenced by numbness in his lower extremities.   Dr. Chillag opined that Claimant would "only be capable of extremely light work and could not stand more than two or three hours out of an eight hour day.   Most of his work would have to be in the sitting position and be confined to sedentary jobs." (Tr. at 228.) Dr. Chillag hand wrote the following post script: "I forgot to mention that even after sitting up for 1 1/2 to 2 hours he [will need to] lie down because of back problems which will continue to worsen." (Tr. at 228.)

Claimant submitted a second letter from Dr. Chillag to the Appeals Council.   On July 3, 2006, Dr. Chillag wrote that he had examined Claimant again on June 12, 2006.   Claimant weighed 281.1 pounds.   Claimant's blood sugar was 414.   He had no reflexes in the upper or lower extremities.   Dr. Chillag had reviewed Ms. Kelly's

report and indicated that he agreed with it.  Dr. Chillag opined that "because of [Claimant's] severe uncontrolled diabetes, his obesity, his marked upper and lower extremity peripheral neuropathy that he is totally disabled for any occupation." (Tr. at 233.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to find Claimant's spinal stenosis with radiculopathy, nerve root compression, diabetic neuropathy, obesity and mental impairments to be severe; (2) the ALJ failed to properly analyze the issue of whether Claimant meets or equals Listings 1.04 and 12.05C; (3) the ALJ's residual functional capacity finding is not supported by substantial evidence; (4) the ALJ erred in assessing Claimant's subjective complaints of pain; and (5) the ALJ adopted the vocational expert's response to a hypothetical question that did not include all of Claimant's limitations. (Pl.'s Br. at 6-23.)

The Commissioner argues that (1) the ALJ properly evaluated Claimant's impairments and determined that they did not meet any listing of impairments; (2) the ALJ properly determined that Claimant had the residual functional capacity for sedentary work; (3) the ALJ's pain and credibility analysis is supported by substantial evidence; and (4) the ALJ's hypothetical question to the vocational expert accurately reflects Claimant's limitations.

10

(Def.'s Br. at 8-18.)

A.  Severity/Listings

     Claimant first argues that the ALJ erred in failing to
identify as severe, Claimant's spinal stenosis with radiculopathy,
diabetic neuropathy, obesity and mental impairments including
depression, anxiety, intellectual and personality impairments.
(Pl.'s Br. at 8.)  Claimant asserts that the ALJ failed to properly
acknowledge this evidence and failed in his duty to develop the
record.  (Pl.'s Br. at 13.)  In a related vein, Claimant argues
that the ALJ erred in failing to find that Claimant meets or equals
Listings 12.05C and 1.04.  (Pl.'s Br. at 14-17.)

Severe Back Impairments/Listing 1.04

     The court proposes that the presiding District Judge find that
the ALJ's determination that Claimant's diabetes and degenerative
disc disease were his only severe impairments is supported by
substantial evidence.  The ALJ fully considered the evidence of
record related to Claimant's back impairment and acknowledged that
Claimant had MRI evidence of "mild to moderate central canal
stenosis throughout the entirety of the lumbar spine from L2
through S1; degenerative changes at L2-3 with a broad based disc
bulge; broad based disc bulge at L3-4 with bilateral nerve root
impingement; broad based disc bulge at L4-5 without obvious nerve
root impingement; and severe degenerative changes, grade I
posterior listhesis, and a large broad based disc bulge at L5-S1

11

with bilateral nerve root impingement and central canal stenosis
...." (Tr. at 19.) While the ALJ may not have specifically found
Claimant's "spinal stenosis with radiculopathy" to be a severe
impairment, as Claimant asserts the ALJ should have, the ALJ's
decision reflects a careful consideration of Claimant's back
impairment and the pain and other subjective symptoms resulting
therefrom. In addition, as discussed further below, the ALJ's
residual functional capacity finding reflects the limitations
caused by Claimant's severe impairments and is supported by
substantial evidence.

Furthermore, the court proposes that the presiding District
Judge find that the ALJ properly addressed Listing 1.04 related to
spinal disorders, and his finding that Claimant does not meet or
equal Listing 1.04 is supported by substantial evidence.

Listing 1.04 requires the following:

Disorders of the spine (e.g., herniated nucleus pulposus,
spinal arachnoiditis, spinal stenosis, osteoarthritis,
degenerative disc disease, facet arthritis, vertebral
fracture), resulting in compromise of a nerve root
(including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by
neuro-anatomic distribution of pain, limitation of motion
of the spine, motor loss (atrophy with associated muscle
weakness or muscle weakness) accompanied by sensory or
reflex loss and, if there is involvement of the lower
back, positive straight-leg raising test (sitting and supine);
or
B. Spinal arachnoiditis, confirmed by an operative note
or pathology report of tissue biopsy, or by appropriate
medically acceptable imaging, manifested by severe
burning or painful dysesthesia, resulting in the need for
changes in position or posture more than once every 2 hours;

12

or

C.   Lumbar   spinal   stenosis   resulting   in
pseudoclaudication,   established   by   findings   on
appropriate medically acceptable imaging, manifested by
chronic nonradicular pain and weakness, and resulting in
inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P., App. 1, § 1.04 (2006).

     In his decision, the ALJ found that

     [a]lthough the claimant has some nerve root compression
     there  is  no  evidence  that  he  has  neuro-anatomic
     distribution of pain, limitation of motion, motor loss
     accompanied by sensory reflex loss or positive straight
     leg raising test.  The claimant has no evidence of spinal
     arachnoiditis,   confirmed   by   an   operative   note   or
     pathology  report  of  tissue  biopsy  or  by  appropriate
     medically acceptable imaging.  Finally it is noted that
     the  claimant  does  not  have  lumbar  spinal  stenosis
     resulting in pseudoclaudication, established by findings
     or appropriate medically acceptable imaging, manifested
     by chronic nonradicular pain and weakness, and resulting
     in  inability  to  ambulate  effectively.   Therefore  the
     claimant does not meet or equal the criteria of Section
     1.04 of the Listing of Impairments.

(Tr. at 21.)

     Claimant asserts that Dr. Chillag's finding that Claimant's

"straight leg raising bilaterally, was reduced, as was his lumbar

flexion and ability to bend, that both his knee and ankle jerks

were absent, that he had nerve root compression and spinal canal

narrowing at L-5" and the results of Claimant's MRI demonstrating

spinal canal stenosis throughout the entirety of the spine, disc

bulges, nerve root impingement and severe degenerative changes all

support a finding that Claimant met or equaled Listing 1.04.

(Pl.'s Br. at 15.)

     There is no evidence that Claimant even comes close to meeting

13

the requirements of Listing 1.04B or 1.04C, and Claimant instead seems to assert that he meets or equals Listing 1.04A. However, the evidence of record does not indicate that Claimant had neuro-anatomic distribution of pain, limitation of motion of the spine *and* motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. Dr. Chillag found that Claimant's reflexes were absent and that straight leg raising was possible to 70 degrees on the right and 60 degrees on the left, but there is no evidence from Dr. Chillag or otherwise that Claimant had motor loss (atrophy with associated muscle weakness or muscle weakness). Furthermore, Dr. Beard found that Claimant had "no evidence of weakness on manual muscle testing. Sensation appears intact." (Tr. at 186.) In addition, Dr. Beard found that Claimant's deep tendon reflexes were 1+ in the biceps, triceps and patella and trace Achilles. Claimant could heel walk, toe walk and tandem walk and squat. (Tr. at 186.)

There is no doubt that Claimant had a severe back impairment that reduced his residual functional capacity to sedentary work, further reduced by nonexertional limitations. However, the substantial evidence of record does not support a finding that Claimant meets or equals Listing 1.04. The evidence submitted to and considered by the Appeals Council from Dr. Chillag does not provide a basis for changing the ALJ's decision. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991) (when the Appeals

Council specifically incorporates new evidence into the administrative record, the court must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Commissioner's finding).

<u>Diabetes</u>

Regarding Claimant's assertion that the ALJ should have found that Claimant had severe "diabetic neuropathy" (Pl.'s Br. at 8), Claimant apparently is referring to Dr. Chillag's statement that Claimant has "severe uncontrolled diabetes mellitus" with "advanced neuropathy as evidence[d] by numbness in his lower extremities and absent reflexes." (Tr. at 228.)

In his decision, the ALJ properly found that Claimant's diabetes was severe, but rejected Dr. Chillag's opinion that Claimant's diabetes was uncontrolled. The ALJ summarized the evidence of record supporting this finding, including evidence of record from FamilyCare and that Dr. Chillag noted that Claimant occasionally borrows a test kit and checks his blood sugar, which is usually around 120. (Tr. at 23.) The ALJ further observed that the evidence of record generally indicated that Claimant's diabetes was under good control when Claimant takes his medication. (Tr. at 23.)

The ALJ's observations about Claimant's diabetes are correct. There is minimal evidence of record indicating that Claimant received ongoing treatment for diabetes or any other medical

condition.  The evidence that does exist from FamilyCare indicates a diagnosis of diabetes mellitus, but does not indicate it was uncontrolled.  The **one-time** finding by Dr. Chillag that Claimant had uncontrolled diabetes is suspect and was appropriately rejected by the ALJ.  Again, the evidence submitted to the Appeals Council from Dr. Chillag does not provide a basis for changing the ALJ's finding about Claimant's diabetes.  Wilkins, 953 F.2d at 96.  The only evidence of record before the ALJ indicating uncontrolled diabetes came from Dr. Chillag and was dated February 7, 2006.  Other than Dr. Chillag's second letter dated July 3, 2006, and submitted to the Appeals Council, stating the very same unsupported conclusion, there is no other evidence indicating Claimant's diabetes was uncontrolled.

<u>Obesity</u>

As to Claimant's assertion that the ALJ erred in failing to find his obesity to be a severe impairment, Claimant does not identify how his obesity impacted his ability to work.  Certainly, Claimant's obesity contributed to his other impairments, particularly his back impairment and diabetes, and to that extent, the ALJ's residual functional capacity finding and other findings adequately reflected any limitations resulting from obesity.

<u>Mental Impairments/Listing 12.05C</u>

Turning to Claimant's mental impairments, the court proposes that the presiding District Judge find that substantial evidence

supports the ALJ's determination that Claimant does not have a severe mental impairment.

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a (2006). First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates

otherwise.  §§ 404.1520a(d)(1) and 416.920a(d)(1).  Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1.  §§ 404.1520a(d)(2) and 416.920a(d)(2).  Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity.   §§ 404.1520a(d)(3) and 416.920a(d)(3).   The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2).

In his decision, the ALJ determined that Claimant did not have a severe mental impairment.  In reaching this conclusion, the ALJ rejected the evidence of record from Ms. Kelly:

> The undersigned totally rejects the diagnoses and the limitations found on the assessment by Ms. Kelly.  Ms. Kelly found that the claimant's IQ scores were valid.  This opinion is not supported by the evidence of record.  The claimant reported he has a high school education and was not in special education classes (Exhibit 1E).  He also indicated in a questionnaire that he was capable of counting change, using a checkbook, and handling a savings account (Exhibit 5E).  The claimant testified that he can read and write.  While the claimant's school records reveal rather low grades, it is noted that they definitely do not indicate mild mental retardation.  In fact, the records indicate that the claimant was absent

a considerable number of days, but did graduate (Exhibit 8E).  The claimant acknowledges that he was not retained in any grade.  He has a driver's license and does indeed drive.  It is noted that Ms. Kelly also diagnosed personality disorder, not otherwise specified.  Ms. Kelly noted in the summary that the claimant was referred to her for psychological evaluation by his attorney, who was attempting to assist him in establishing disability.  However, the claimant is not taking any medication for a mental health condition or even undergoing any type of treatment.  Therefore, the undersigned finds that the opinions by Ms. Kelly are not supported by the evidence of record and gives them no weight.

(Tr. at 20.)

The ALJ went on to evaluate the "B" criteria.  He found that Claimant has no restriction in activities of daily living, mild difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace and no episodes of decompensation.  (Tr. at 20.)  Thus, the ALJ concluded that Claimant's mental impairments were not severe.

The ALJ's findings regarding Claimant's mental impairments are supported by substantial evidence.  Also, the ALJ properly weighed the evidence of record from Ms. Kelly in keeping with the applicable regulations at 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006) in determining that Claimant's mental impairments were not severe.  Regarding Ms. Kelly's opinion that Claimant had mild mental retardation, the ALJ properly rejected this, citing multiple reasons.  The overwhelming evidence of record indicates that Claimant was not mildly mentally retarded.  As the ALJ indicated in his decision, Claimant graduated from high school, was not in

19

special education, could count change, use a checkbook, and could read and write. (Tr. at 20.) As to Ms. Kelly's diagnosis of a personality disorder, Claimant has not undergone psychiatric treatment and is not currently taking medication. In addition, an evaluation of the "B" criteria indicates only mild interference in two of the four areas of functioning because of Claimant's mental impairments. Ms. Kelly's was a one-time examination, done at the request of Claimant's counsel, and is generally inconsistent with the remaining evidence of record. Claimant took no psychotropic medications, received no ongoing mental health treatment and his ability to function in the four areas identified above was not compromised significantly by his alleged mental impairments. The ALJ properly determined that Ms. Kelly's report was entitled to little weight. Furthermore, because the ALJ's finding that Claimant did not have mild mental retardation (a requirement of Listing 12.05) or any other severe mental impairment is supported by substantial evidence, the ALJ was under no obligation to proceed to the third step of the sequential analysis to determine if Claimant met or equaled Listing 12.05C or any other mental listing.

Duty to Develop

In arguing that the ALJ erred in failing to find certain impairments severe, Claimant argues in passing that the ALJ erred in his duty to develop the record. (Pl.'s Br. at 13.) The court proposes that the presiding District Judge find that the evidence

of record was complete, and the ALJ was under no obligation to develop it further.  See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate.").

B.  Residual Functional Capacity/Weight Afforded Medical Evidence

Next, Claimant argues that the ALJ erred in his residual functional capacity finding.  In particular, Claimant argues that the ALJ erred in weighing the evidence of record from Dr. Chillag and Ms. Kelly.  (Pl.'s Br. at 18.)

In his decision, the ALJ found Claimant limited to sedentary work, reduced by an inability to climb ladders, ropes or scaffolds, an ability to occasionally climb ramps and stairs, balance, stoop, kneel and crawl, a need to avoid concentrated exposure to extreme cold, extreme heat and vibration and a need to avoid moderate exposure to hazards of machinery, balance and heights.  (Tr. at 21.)

The court has addressed above, the weight afforded the evidence of record from Ms. Kelly.

Although the ALJ rejected Dr. Chillag's opinion that Claimant's diabetes was uncontrolled, the ALJ adopted at least part of Dr. Chillag's opinion.  In particular, the ALJ stated that he

21

gave weight to Dr. Chillag's opinion that Claimant "is confined to sedentary exertion.  However, the undersigned gives no weight to the addendum by Dr. Chillag indicating that after sitting up for 1 1/2 to 2 hours the claimant would have to lie down, as this opinion is not supported by the objective findings of record." (Tr. at 23.)  As with Ms. Kelly, the ALJ properly weighed the evidence of record from Dr. Chillag in keeping with the applicable regulations at 20 C.F.R. §§ 404.1527(d) and 416.927(d).  Dr. Chillag's findings are not well supported and are inconsistent with those of Dr. Beard and the fact that Claimant received minimal and conservative medical treatment for his back impairment.  Thus, the court proposes that the presiding District Judge find that the ALJ's residual functional capacity finding is supported by substantial evidence and that the ALJ properly weighed the medical evidence of record.

C.  <u>Pain and Credibility</u>

    Claimant further argues that the ALJ erred in his pain and credibility analysis.  (Pl.'s Br. at 19-20.)  The court proposes that the presiding District Judge find that the ALJ's findings are consistent with the applicable regulations, case law and social security ruling and are supported by substantial evidence.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).  The ALJ's decision contains a thorough consideration of

Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and precipitating and aggravating factors. (Tr. at 22.)

In rejecting Claimant's credibility, the ALJ was persuaded by a number of factors, including the lack of medical treatment, the objective medical evidence of record and Claimant's essentially normal activities as reported throughout the record, among others. (Tr. at 22-23.) The ALJ's finding in this regard is reasonable and supported by substantial evidence.

D.  Hypothetical Question

Finally, Claimant argues that the ALJ failed to adopt the vocational expert's response to a hypothetical question including all of Claimant's impairments. The court has found above, that the ALJ's residual functional capacity finding is supported by substantial evidence. The ALJ posed a hypothetical question that included the limitations found in the residual functional capacity finding and, as such, the court proposes that the presiding District Judge find that the ALJ posed a hypothetical question that included all of Claimant's limitations. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989) (To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments.).

For the reasons set forth above, it is hereby respectfully

23

RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable David A. Faber.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

January 10, 2008
     Date

Mary E. Stanley
United States Magistrate Judge

25